THE COUNTY OF LAWRENCE

*v.*

ED. SCHMAULHAUSEN *et al.*

*Filed at Mt. Vernon November 8, 1887.*

123   321
160   455
123   321
168   375
123   321
183   397
123     321
e211  <sup>3</sup> 62
211     63
211     64

1. ELECTIONS—*returns not properly made—duty of canvassing board.* When the poll-book or list of voters returned by the judges of an election of a town to a county clerk, has not the certificate required by the statute, (chap. 46, sec. 61,) and such certificate is also absent from the poll-books returned from such town to the Secretary of State and the town clerk, the votes shown by the return from such town should not be counted by the canvassing board, but should be rejected, and the result declared upon the other returns made in conformity with the statute, especially when no offer is made to correct such returns before the close of the canvass.

2. SAME—*evidence before canvassing board.* The certificate of the judges of election, together with the list of voters and the tally sheet, is the only evidence upon which the canvassing board can act in determining the result of an election in the county.

3. SAME—*contesting an election—its scope and purpose—not as a mere review of the action of canvassers.* The statute providing for the contest of an election is not designed merely to furnish a mode of reviewing or appealing from the action of the board of canvassers, but such contest is given for the purpose of finding out how many votes were cast for or against a candidate, or for or against a measure.

4. An election can not, therefore, be contested, and the result changed, by merely showing that the canvassing board counted the votes of a particular town, upon a return and certificate not in conformity to the law. It must be shown, further, that the votes so counted were not actually cast, or were not legal votes. The votes shown by the defective return may have been actually cast, and they may have been legal votes.

APPEAL from the Circuit Court of Lawrence county; the Hon. WILLIAM C. JONES, Judge, presiding.

This is a petition claimed to be filed under section 117 of the Election law of this State, (chap. 46, Hurd's Rev. Stat. of 1885, p. 542) for the alleged purpose of contesting an election in Lawrence county. The petitioners are more than five in number and style themselves "electors of the county of Lawrence." The petition avers, that, on July 12, 1886, the board

of supervisors of Lawrence county passed and caused to be entered of record an order to build a new court house at a cost of $50,000, and to submit to the legal voters of said county, at the general election on November 2, 1886, a proposition to issue bonds of said county, drawing six per cent interest or a less rate, if possible, to the amount of $50,000, for the payment for the building of said court house, to become due in ten years; that, in pursuance of such order, John W. Calvert, clerk of the county court of Lawrence county, gave notice to the electors, that, on Tuesday, November 2, 1886, an election would be held in the several towns of the county for certain State and county officers, "and to vote for or against the proposition to issue county bonds in the sum of $50,000 for the purpose of erecting a new court house at Lawrenceville in said county of Lawrence;" that, at the election so held, the electors of the county voted upon the question so submitted; that, on the next day after the election, returns thereof were made to the county clerk from all the towns in the county "excepting the town of Petty, from which," it is alleged, "no returns were made nor have any such returns yet been made in conformity to the statute," etc.; that, by the returns of the election made to the county clerk, it appeared that 1380 votes had been cast for the proposition to issue county bonds to build the new court house, and that 1275 votes had been cast against it, showing a majority of 105 votes in favor of the proposition; that the canvassing board, consisting of John W. Calvert, county clerk, and John B. Regan and B. H. Propes, justices of the peace of the county, entered upon the discharge of the duty of canvassing the returns of the votes, cast at said election, and making abstracts thereof; that the board, in violation of its duty, canvassed and counted 17 votes, as cast for, and 307 votes, as cast against said proposition, in the town of Petty, "when in fact no return whatever had ever been made to the county clerk by the judges and clerks of election of the town of Petty;" that, by the wrongful act of the

canvassing board, in counting the votes purporting to have been cast in the town of Petty and including the same in the abstract made and filed for preservation in the county clerk's office, an apparent majority of 187 votes against said proposition was certified, "when, if only the returns made to said clerk had been counted, canvassed and included in said abstract, there would have been a majority of 105 votes in favor of said proposition;" that petitioners as electors of the county "desire to and do contest the election aforesaid upon the question so submitted to the people and upon no other question whatever," and state the following grounds or points, upon which they make such contest, to-wit:

The board of canvassers canvassed and counted, and included in the abstract made, votes alleged to have been cast in the town of Petty, without having any returns made by the judges and clerks of election, and without any legal evidence that the votes so counted and canvassed had been cast.

If any election was held in the town of Petty, the votes cast were not canvassed, and returns thereof enveloped and sealed in the room where said election was held, as provided by law.

The clerks of said election did not set down in their poll-books the names of the persons voted for, and the question voted upon, written at full length, the office for which said persons received votes, or the question voted upon, and the number of votes received, or cast, expressed in words at full length.

No list of voters, certified according to law, was ever enveloped, or sealed, and by one of the judges delivered to the county clerk.

No list of voters, and no tally sheet thereof was enveloped, sealed, and directed to the Secretary of State, and deposited in the post-office, as provided by law.

No list of voters, and no tally sheet, with certificates thereon, as required by law, was enveloped, sealed, and delivered to the town clerk, as required by law.

The judges did not, before any returns to the county clerk, Secretary of State and town clerk, were sealed up, compare the tally papers, footings and certificates, and see that they were correct duplicates, and certify to the correctness of the same.

No returns of any election in Petty township, on the 2d day of November, 1886, have ever been made, or offered to be made, by the judges and clerks of election in said town.

The county clerk and justices of the peace counted and canvassed 324 votes more than were returned to them, and by so doing changed the result of said election, on the question of issuing bonds to build the court house, from an affirmative to a negative.

The petitioners make the county of Lawrence defendant, and pray for process, and that the votes in the town of Petty, which were canvassed and counted by the canvassing board, may be excluded from the count of the votes of said election, and that the abstract of votes reported by the county canvassers, may be corrected accordingly, and that the vote of said county on the question of issuing bonds to build a new court house may be declared by the decree of the court upon the returns lawfully made to the county clerk, and for other and further relief, etc.

The answer of the defendant admits that the board of supervisors passed and entered of record the order to build a new court house, and to submit the question of issuing $50,000 of bonds to a vote of the electors at the general election in November, 1886; that notice was given as alleged; that, at the election, the electors voted on the question of issuing bonds, and that, on the day after the election, returns were made to the county clerk; but denies that no returns were made to the county clerk from the town of Petty, and charges the truth to be that returns were made from the town of Petty, on the next day after the election; denies that, by the returns, a majority of the legal votes cast were in favor of issuing the bonds, and charges that the returns made to the county clerk, showed a

majority of 187 votes against the proposition to issue the bonds; admits that, the county clerk and John B. Regan and B. H. Propes, two justices of the peace, constituted a canvassing board; that said board canvassed the returns and made an abstract, but denies that said canvassing board, in violation of their duty, canvassed and counted any votes, either for or against said proposition, from the town of Petty, which should not have been canvassed and counted, and an abstract thereof made by said board; denies that no returns were made from the town of Petty to the county clerk, by the judges and clerks of the election; but avers that returns were made by the said judges and clerks, which were canvassed and counted by said board, and abstracts of the same made; that upon a full and honest canvass of all votes cast at said election, by said convassing board, there was found to be a majority of 187 votes against the said proposition, and that it was so declared by said board, and an abstract was made by said board showing such majority to have been given against the said proposition; denies the existence and truth of all the specific grounds and facts, stated in the petition as reasons for throwing out and not counting the votes cast in the town of Petty for and against the said proposition, and charges the truth to be, that if any such facts exist they are but mere irregularities by which the election in that town can not be invalidated and the legal voters disfranchised; that, if there were any irregularities in the certificates of the judges and clerks, an offer was made to correct and perfect such certificates before the returns from the town of Petty were canvassed and counted, and an abstract of the votes made; and that the said canvassing board proceeded to canvass and count the votes of the town of Petty without making any correction of such certificates; the defendant offers to perfect and complete the certificate of the judges and clerks of said election in the town of Petty, by procuring the said judges and clerks to sign said certificate in the presence of the court, if such certificate, on

inspection by the court, should be found to lack the signature of such judges and clerks. Replication was filed to the answer.

Upon the hearing, the petitioners introduced the following evidence: Poll-book of an election held in the town of Petty, on the 2d day of November, 1886, duly certified by the Secretary of State as a true copy of the one filed in his office, showing the names of the judges of election as follows: Assessor, Clinton Thorn, supervisor, David Smith, collector, D. W. Judy; also the names of the clerks, as follows: William H. Highfield, T. J. Smith, J. R. Roseborough; oaths of the judges and clerks; a list of the electors voting at the election, showing that 329 votes were cast; a duly certified copy from the office of the Secretary of State of a tally list of an election held in the town of Petty, on Tuesday, the 2d day of November, 1886, showing the following: For county bonds, 17 votes; against county bonds, 307 votes.

B. H. Propes, sworn: "I was a member of the board that counted and canvassed the returns of the election held in Lawrence county, on Tuesday, the 2d day of November, 1886; John B. Regan and John W. Calvert, county clerk, were the other members; there was a tally sheet and return of the names of voters from the town of Petty; they were not signed by any of the judges or clerks, and the number of votes given was not written in the blanks made for that purpose; on the question of issuing bonds, we counted 17 votes for and 307 votes against, from the town of Petty; we obtained the number from the tally sheet; we made an abstract of the votes cast in the county on the question of issuing bonds to build the new court house; the abstract included 17 votes for and 307 votes against the proposition, as having been cast in the town of Petty; including the votes from the town of Petty, the abstract showed 1375 votes for and 1582 votes against issuing the bonds."

The witness here identified the return and tally sheet of the town of Petty, produced from the office of the county clerk,

and said: "They are the same that were before the canvass-
ing board; the tally sheet is in the same condition as when
returned, but the other is not; David Smith, the supervisor of
the town of Petty, who made the returns, has signed it, and
the blanks for the number of votes have been filled; these
changes were made after the canvass; Smith signed his name
on the same day, and Calvert filled the blanks with the number
of votes indicated on the tally sheet; there was nothing said
about having the returns fixed; Smith did not propose to take
the returns back to have them perfected; he made no offer of
that kind."

The poll-book filed with the county clerk, returned from the
town of Petty, showing the names of the judges and clerks the
same as the one from the office of the Secretary of State, and
the oaths administered, and a list of the names of electors,
and showing that 329 votes were cast; certificate duly filled
up and signed by David Smith, one of the judges, showing
that 17 votes were cast for and 307 votes were cast against
issuing the bonds; the tally list of the election held in the
town of Petty, returned to the county clerk, being the same
used by the canvassing board in canvassing and counting the
returns and making the abstract, and showing the number of
votes cast for the proposition to issue the bonds to be 17, and
the number cast against the proposition to be 307; the ab-
stract, made and signed by the canvassing board, on the ques-
tion of issuing bonds to build the new court house, showing as
follows: "For county bonds received 1375 votes; against
county bonds received 1582 votes."

The petitioners here rested, and defendants declined to offer
any evidence.

The circuit court of Lawrence county, where the cause was
tried, rendered a decree, finding the allegations of the petition,
as above set forth, to be true, and decreeing that all the votes,
counted by the canvassing board as having been cast in the
town of Petty, "be and are excluded from said canvass and

count and from the abstract thereof made by the said canvassing board;" that the papers filed in the county clerk's office, purporting to be returns of an election in the town of Petty, "are absolutely null and void, and of no force or effect whatever;" that the number of votes cast and returned and counted in favor of the proposition to issue the bonds was 1378, and that the number of votes cast, returned and counted against said proposition was 1275, and that "the said proposition was carried by a majority of 105 votes at said election;" that defendant pay the costs, etc.

Messrs. BELL & GREEN, and Mr. K. P. SNYDER, for the appellant.

Mr. E. CALLAHAN, for the appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The sixty-first section of chapter 46 of the Revised Statutes, entitled "Elections," (Hurd's Rev. Stat. 1885, p. 536,) provides, that, when the votes shall have been examined and counted, the clerks shall set down in their poll-books the name of every person voted for written at full length, the office for which such person received such votes, and the number he did receive, the number being expressed in words at full length, such entry to be made, as nearly as circumstances will admit, in the following form, to-wit: "At an election held at * * * in the county of * * * and State of Illinois on the * * * day * * * in the year * * * the following named persons received the number of votes annexed to their respective names for the following described offices, to-wit: (name of candidate) had (number of votes) for (title of office), (and in the same manner for any other persons voted for.)  Certified by us.

A. B. ⎫
C. D. ⎬ Judges of election."
E. F. ⎭

The sixty-second section provides, that one of the lists of voters with such certificate thereon, and one of the tally papers footed up so as to show the correct number of votes cast for each person voted for, shall be carefully enveloped and sealed up and put into the hands of one of the judges of election, who shall, within two days thereafter, deliver the same to the county clerk, or his deputy, at the office of said county clerk, "who shall safely keep the same ;" that another of the lists of voters, with such certificate written thereon, and another of the tally papers footed up as aforesaid, shall be carefully enveloped and sealed up and duly directed to the Secretary of State and by another of the judges of election deposited in the post-office, within twelve hours after the close of the polls, which poll-book and tally list shall be filed and kept by the Secretary of State for one year, "and certified copies thereof shall be evidence in all courts, proceedings and election contests ;" that another of the lists of voters, with such certificate written thereon, and another of the tally papers footed up as aforesaid, shall be carefully enveloped and sealed up and delivered by the third one of the judges without delay, in counties under township organization, to the town clerk of the town, in which the district may be, and, in counties not under township organization, they shall be retained by one of the judges of election, and safely kept by said town clerk and judge, for the use and inspection of the voters of such district, until the next general election ; that before said returns are sealed up as aforesaid the judges shall compare said tally papers, footings and certificates and see that they are correct and duplicates of each other and certify to the correctness of the same.

Section 71 of said chapter 46 provides, that, within seven days after the close of the election, the county clerks of the respective counties, with the assistance of two justices of the peace of the county, shall open the returns and make abstracts of the votes, etc. ; that "the foregoing abstracts shall be preserved by the county clerk in his office."

In this case, the poll-book or list of voters, returned by the judges of election in the town of Petty to the county clerk, did not have upon it or in it or attached to it the certificate required by the statute as above set forth. Such certificate was also absent from the poll-books or lists of voters returned from the town of Petty to the Secretary of State and to the town clerk. The county clerk and two justices of the peace, who constituted the canvassing board in Lawrence county, acted upon the returns from the town of Petty, notwithstanding the absence of the certificate in question from the poll-book, and, in making up the total vote cast in the county, they counted the votes cast in the town of Petty, as shown by the defective returns. The total vote of the county, including the votes alleged to have been cast in the town of Petty, showed a majority against the issuance of the bonds, while there was a majority in favor of their issuance, if the votes from that town had not been counted. According to the "abstract" of the votes made and signed by the canvassing board, there were 1375 votes *for* issuing the bonds to build the new court house and 1582 votes *against* issuing them.

Upon the authority of *The People* v. *Nordheim,* 99 Ill. 553, the board was not authorized to count the votes shown by the returns from the town of Petty, owing to the failure of the judges and clerks of election in that town to make and sign the certificate required by law; it should have declared the result without taking those returns into consideration. The proof does not show, that any offer was made to amend the returns before the close of the canvass by attaching the necessary certificate and having it signed by the judges of election. There seems to have been an inexcusable neglect of duty by the judges and clerks, who officiated in the town of Petty, notwithstanding the heavy penalties imposed by the statute.

But the question in this case is whether, under the provision made by our statute for contesting an election, the circuit court can substitute itself for the canvassing board, set aside the

canvass made by the board, reject the returns from the town of Petty, declare the result of the election as shown by the other returns, and amend the abstract of the vote, as preserved by the county clerk. The prayer of the petition is, that the votes in the town of Petty may be excluded from the count; that the abstract of votes, reported by the canvassers, may be corrected by the exclusion of the votes from that town; that the vote of the county on the question submitted may be declared upon the balance of the returns after throwing out those from the town of Petty. The petition nowhere charges, that 17 votes were not cast for the issuance of the bonds in the town of Petty, or that 307 votes were not cast there against the issuance of the bonds. It is not alleged, that 324 voters did not properly and lawfully vote upon the question submitted at the election in the town of Petty. It is not claimed that any of these 324 votes were illegal or fraudulent. The only charge made in the petition, which is insisted upon in argument, is that the poll-book, returned to the county clerk, did not have the required certificate signed by the judges and attested by the clerk.

The certificate, together with the list of voters and the tally sheet, is the *evidence* which the statute requires, that certain votes have been cast. The canvassing board can only act upon the particular form of evidence, so specified in the statute. (*The People* v. *Nordheim, supra.*) That board can receive no other proof than the list of voters, with the statutory certificate, and the tally paper.

The petition in this case does not contest the *election;* it contests the *canvass;* it merely asks that the canvass already made be set aside and amended, because the canvassing board acted upon insufficient evidence; it seeks to review such canvass or count as being erroneous, and specifies the want of proper proof as constituting the error. The decree is, *not* that the 324 votes, alleged to have been cast in the town of Petty, were not cast as matter of fact, or were illegal or fraudulent,

but that all the votes counted as cast in that town be excluded from the canvass and the abstracts thereof, and that the papers, purporting to be returns from that town, are null and void, and that the votes returned and counted in favor of the bonds are 1378 and those returned and counted against them are 1275.

We do not think, that the statute providing for the contest of an election was designed merely to furnish a mode of reviewing or appealing from the action of the board of canvassers. An examination of sections from 113 to 123 inclusive in chapter 46 above referred to will show, that the proceedings there prescribed for *contesting an election* were so prescribed for the purpose of finding out how many votes were cast for or against a candidate or for or against a measure and thereby ascertaining the will of the people. We have held that the practice in these proceedings under the statute is the same as in chancery suits. *Talkington* v. *Turner,* 71 Ill. 234; *Dale* v. *Irwin,* 78 id. 170; *Kingery* v. *Berry,* 94 id. 515.

Even if it was true, that the list of voters and the tally sheet returned from the town of Petty were not accompanied by the necessary certificate, it may have been none the less true, that the 324 votes, shown by the tally sheet to have been cast, *were* actually cast and were *bona fide* and lawful votes. The circuit court is not limited to the particular form of evidence, to which the canvassing board is restricted by the statute.

The people of Lawrence county ought not to be saddled with a debt of $50,000 to build a new court house if, at the election called for the purpose of deciding the question, there was a majority of some 200 votes against incurring such debt. The petition and the proceedings under it should have been directed to the matter of ascertaining the true vote of the people upon the subject, and not to the mere amendment of the canvass. For the reasons here stated the decree of the circuit court is reversed and the cause is remanded.

*Decree reversed.*