[No. 1792.   Decided July 23, 1895.]

WILLIAM H. MOYER, *Appellant*, v. AARON T. VAN DE VANTER, *Respondent.*

ELECTIONS AND VOTERS — FAILURE OF INSPECTOR TO INITIAL BALLOTS — CONSTITUTIONALITY OF ACT — EXCEPTIONS TO FINDINGS.

The evidence introduced at the trial of a cause, or any errors in reference thereto, will not be reviewed on appeal, upon an exception to the findings of the lower court, which merely states that "to these findings of fact and conclusions of law and to each of them the contestant excepts."

The failure to place the stamp required by Gen. Stat. § 384, upon official ballots used in an election, until they are returned by the voter to be deposited in the ballot box, is an irregularity which would not vitiate the ballots in the absence of fraud.

The provision of Gen. Stat. § 391, directing that in the canvass of the votes any ballot, which is not indorsed by the initials of some one of the election officers, shall not be counted, is in conflict with the constitutional provision entitling all male persons having certain qualifications to the right to vote at all elections, since the effect of such statutory provision would be to debar voters of their constitutional right to vote, without fault on their part.

The fact that election officers fail to have booths erected which comply with the law, is a mere irregularity insufficient to vitiate the election.

*Appeal from Superior Court, King County.*

*Winsor, Bush & Morris, John B. Hart,* and *White & Munday,* for appellant:

The court below erred in its first conclusion of law, that the ballots having no initials of election officers

thereon were legal votes, and that the provision of law requiring such indorsement, and declaring that unless so indorsed they should be void and no officer should count them, was directory merely. *Ackers v. Howard,* L. R. 16 Q. B. 740; *Cusick's Appeal,* 136 Pa. St. 459; *People ex rel. Nicholls v. Commissioners,* 129 N. Y. 395; *Parvin v. Wimberg,* 130 Ind. 561 (30 Am. St. Rep. 254); *Bechtel v. Albin,* 134 Ind. 193; *Sego v. Stoddard,* 36 N. E. 207; *State v. Gay,* 60 N. W. 677; *Ellis v. May,* 58 N. W. 485; *Whittam v. Zahorik,* 59 N. W. 58; *State v. Hagen,* 60 N. W. 110; *Spurgin v. Thompson,* 37 Neb. 39; *State v. Connor,* 23 S. W. 1102; *State v. Stein,* 35 Neb. 848; *Phillips v. Goff,* L. R. 17 Q. B. 812; *Woodward v. Sarsons,* L. R. 10 C. P. 747. The elector takes his right to vote under such regulations for secrecy and purity as the legislature may make not inconsistent with the fundamental law. *Londoner v. People,* 15 Colo. 557; *Kearns v. Edwards,* 28 Atl. 725; *Talcott v. Philbrick,* 59 Conn. 472.

*Brady, Gay & McBride, Andrew F. Burleigh,* and *Struve, Allen, Hughes & McMicken,* for respondent:

.The rule of construction of statutes governing the conduct of election officers, in the absence of fraud, is always liberal; and the trial court committed no error in counting, as legal, ballots to which the only objection was the absence of initials of an election officer. *Ellis, Atty. Gen., ex rel. Scott, v. Glaser,* 61 N. W. 649; *Wilds v. State Board,* 32 Pac. 136; *Pennington v. Hare,* 62 N. W. 116; *State, ex rel. Braley, v. Gay,* 60 N. W. 676; *People v. Avery,* 61 N. W. 4; *Boyd v. Mills,* 37 Pac. 16 (42 Am. St. Rep. 306); *Lindstrom v. Board,* 54 N. W. 280; *Blankenship v. Israel,* 24 N. E. 615; *Stinson v. Sweeney,* 30 Pac. 997; *Miller v. Pennoyer,* 31 Pac. 830.

The opinion of the court was delivered by

Scott, J.—The parties hereto were rival candidates at the last general election for the office of sheriff of King county. The county canvassing board found that respondent was entitled to the office and declared him elected thereto, whereupon a certificate of election was issued to him. Within a few days thereafter appellant filed a statement of contest alleging matters to show that he had received the greatest number of legal votes and was entitled to the office. Issue was taken by the respondent upon certain of the material matters alleged, and a trial was had which resulted in favor of the respondent, and this appeal was taken therefrom.

A number of findings of fact were made by the lower court which with certain conclusions of law based thereon, were duly reduced to writing and made a part of the case. Whereupon appellant excepted as follows: "To these findings of fact and conclusions of law and to each of them the contestant excepts." An objection was made by the respondent to a consideration of any of the evidence introduced or errors alleged with reference thereto on the ground that no sufficient exception was taken to any fact found by the lower court, and under repeated holdings of this court heretofore this objection must be sustained. As a consequence thereof the case presented upon appeal is much abbreviated, many of the questions sought to be raised by the appellant are eliminated, and the only question left for our consideration is whether the facts so found by the lower court are antagonistic to the conclusions of law and judgment. Appellant's main contention in this respect is based upon the 7th finding, which is as follows:

"I find that in Franklin precinct there were 194

votes cast and counted for Aaron T. Van de Vanter, the defendant and contestee, and 17 votes for William H. Moyer, the plaintiff and contestant, for said office of sheriff, which said votes entered into and formed a part of the *total* legal votes hereinbefore found by me to be cast for each of the said contestant and contestee, to wit: on the part of Van de Vanter, entered into and made a part of the 4,380 votes so counted; on the part of Moyer, entered into and became a part of the 4,373 so counted for him. I further find that the election officers of Franklin precinct failed to place upon any of said ballots the initials of the inspector or any judge thereof before the said ballot was deposited in the ballot box. And I further find that a blank ballot was given to each and every elector without either the official stamp or the initials of an election officer thereon; that said elector took said ballot and the same was marked by said elector and returned by him to the election officers, when in the presence of the elector the inspector of said election placed upon said ballot the official stamp furnished for that purpose by the county auditor in pursuance of law, after which the said ballot was folded and placed within the ballot box, wherein it was kept until at the time of the counting by the election officers and at the close of the polls all of the ballots of said precinct were counted and returned in a sealed box by a special messenger to the county auditor in the manner directed by law. I further find from the evidence and stipulations in this case that the ballots voted by the electors in each and every. instance were placed in the said box, and that the said ballots had been safely kept and was produced into this court as an original exhibit as evidence of the said recount. I further find that the election officers of Franklin precinct were in close and watchful attendance at the polls and of the ballot box and ballots during the entire election; that no ballots were used except those received from the election judges or taken under their direction; that the election was held in an orderly manner; that the votes were counted and returned to the county auditor as required by law, and

that the vote so returned were the votes actually cast at Franklin precinct at said election."

The important question to be determined is whether the vote cast in this precinct could be counted, the initials of no one of the election officers having been written on any of the ballots.  The law provides that there shall be printed on the back of the ballots with the rubber or other stamp provided for that purpose the designation "official ballot," the name or number of the election precinct, the name of the county, the date of the election, the name and official designation of the clerk who furnishes the tickets to the judges of election, and that the inspector or one of the judges shall also write his initials thereon.  Secs. 382 and 384, Gen. Stat.  The ballots bore the proper stamp, and the fact that it was not placed thereon before they were delivered to the electors but was done when they were returned to be deposited in the ballot box, was but an irregularity which could not vitiate them in the absence of any fraud.

Section 391 is as follows:

"In the canvass of the votes, any ballot which is not indorsed, as provided in this chapter, by the official stamp and initials shall be void, and shall not be counted, and any ballot or parts of a ballot from which it is impossible to determine the elector's choice shall be void, and shall not be counted: *Provided*, That when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, it shall be the duty of the judges of election to count such part."

If the language of this section can be given its full force, all the ballots cast in this precinct were rendered void by the failure of the election officers to comply therewith in not having one of their number write his initials thereon, and the effect of it would be to disfranchise all voters in that precinct for that election.

The Constitution, § 1, art. 6, provides that all male persons of the age of twenty-one years or over, possessing certain qualifications specified " shall be entitled to vote at all elections," and § 6 reads as follows:

"All elections shall be by ballot. The legislature shall provide for such method of voting as will secure to every elector absolute secrecy in preparing and depositing his ballot."

Can the legislature enact a law whereby election officers can practically disfranchise all the electors of a precinct where the electors themselves are not at fault? If so, the constitutional guarantee is of small consequence. Legislation going to promote the honesty of elections is most beneficial in character, and as a means of securing this end the general policy of the law is that the ballot shall be a secret one, that it may not be known for which candidate any particular voter voted in order that bribery may be prevented. Provision is also made as to the duties of election officers to the end that a fraudulent canvass of the votes cast may be prevented. There is good ground for recognizing a distinction between the obligations placed upon the individual voter and those matters which relate to the duties of election officers. Great care should be taken to distinguish between those requirements designed to prevent fraud, and which are necessary to the purity of elections, and those which, while designed for the same purpose, are not essential thereto, or we may overreach the salutary effect sought to be obtained from provisions of the character first mentioned by going so far in construing as valid and mandatory provisions of the second class as to open the very door to fraud that was sought to be closed thereby.

The individual voter may well be called upon to see

that the requirements of the law applying to himself
are complied with before casting his ballot, and if he
should wilfully or carelessly violate the same, there
would be no hardship or injustice in depriving him of
his vote; but if, on the other hand, he should in good
faith comply with the law upon his part, it would be a
great hardship were he deprived of his ballot through
some fault or mistake of an election officer in failing
to comply with a provision of the law over which the
voter had no control.  It is also a question in which
the public has a direct and important interest, for the
loss of such vote may have a controlling effect upon a
public matter.  The constitutional provision aforesaid
guarantees the right to vote, and this of necessity car-
ries with it the right to have the vote counted.  Of
course the manner of voting and canvassing votes must
be subject to all reasonable legislative requirements.
Many cases have been cited by counsel as supporting
the positions taken by them respectively, and many of
these involve a consideration of various phases of the
law commonly known as the Australian Ballot Law in
force here, but which is a comparatively new thing in
this country.  These cases cannot all be harmonized,
but the general trend thereof has been to recognize a
clear distinction between those things required of the
individual voter, and those imposed upon election
officers.  There is a disposition to hold the former
valid and mandatory, but where there has been a sub-
stantial compliance with the law on the part of the
individual voter, and it is made to appear that there
has been in fact an honest expression of the popular
will, there is a well-defined tendency to sustain the
same, although there may have been a failure to com-
ply with some of the specific provisions of the law
upon the part of the election officers or some of them.

Language may have been employed in some of the cases in conflict with this position, but when such cases are examined with reference to the specific facts passed upon it will appear that this distinction has been adhered to, and it may truly be said to be the one great underlying principle of all the cases. In case of a violation of the law on the part of an election officer, punishment may be provided therefor, and in this way the law can be rendered effectual without going to the extent of depriving the voter of his right to have his vote counted in consequence of such violation. In this connection it may be well to note that while there is a punishment provided for depositing an unstamped ballot in the ballot box by an election officer, there is none provided for failing to write his initials thereon. Sec. 389, Gen. Stat., is as follows:

" No inspector or judge of election shall deposit in any ballot box any ballot upon which the official stamp as hereinbefore provided for does not appear. Every person violating the provisions of this section shall be deemed guilty of a misdemeanor."

He can deposit a ballot properly stamped, but without the initials, without incurring any penal liability. This may be an omission due to inadvertence upon the part of the lawmakers, but it is the law, nevertheless, and if a ballot so deposited cannot be counted, a door is opened whereby great frauds may be committed with impunity, the voters of an entire precinct, as in this case, practically disfranchised, and the popular will nullified. It appears from the facts found that the vote of this precinct was honestly and fairly cast and counted, and that there was nothing upon the face of the ballots to indicate how any particular voter voted, and that the objections raised thereto apply to all the ballots cast for each of the candidates.

The failure to comply with the law appears to have been due to ignorance of its provisions on the part of the election officers. That the prohibition aforesaid against the counting of these votes under the above circumstances is an unreasonable one and in conflict with the right guaranteed by the constitution seems to us a clear proposition. Were we authorized to hold otherwise, such a holding would be subversive of the best interests of society, and might result in great peril to our governmental structure. Such a holding is not necessary to preserve the purity of elections, for provision can be made for an investigation of charges of actual fraud upon the part of electors and election officers. It would be an interminable task to refer to each of the cases cited in detail, and we content ourselves with giving our conclusions drawn from all of them. No decision cited has gone to the extent that we are asked to go by the appellant in this case; and to accord with the general holdings of the courts, as we understand them in the light of what has actually been decided in the cases, we are compelled to hold that the provision aforesaid against counting ballots where no initials are placed thereon cannot be sustained, and the decision of that question sets this controversy at rest. The finding in question by the lower court supports the conclusion of law based thereon and the judgment rendered.

The fact that the election officers failed to have booths erected which complied with the law, found in the 8th finding, was also an irregularity which would not vitiate the election. None of the other questions raised by appellant in the present aspect of the case are material to this controversy, as they relate to defects in particular votes cast in the various precincts and included in the other findings, and, in case any of

these votes were improperly counted, the court in each instance found a greater number were counted for the appellant than for the respondent, and the findings must be accepted as a whole.

It follows that the judgment must be affirmed.

HOYT, C. J., and ANDERS, DUNBAR and GORDON, JJ., concur.