## WERBER v. HUGHES.

[No. 24,403. Filed June 4, 1925. Rehearing denied October 9, 1925.]

1. ELECTIONS.—*Ballots held to have "distinguishing marks" rendering them void.*—Section 7497 Burns 1926, §6927 Burns 1914, Acts 1897 p. 49, provides that if a voter makes a cross on the large circle enclosing the party name, he shall not mark elsewhere on the ballot and any mark elsewhere shall be treated as a distinguishing mark, from which it follows that ballots which bore the prescribed mark in the party circle and also in the squares in front of the names of all candidates on that ticket had "distinguishing marks" and should not be counted. p. 545.

2. CONSTITUTIONAL LAW.—*Legislative authority supreme when not in conflict with organic law.*—The legislative authority is supreme when not in violation of a higher organic law, and it is not for the courts to decide any matter relating to the necessity of the provisions set forth in the law. p. 546.

3. ELECTIONS.—*Absent voter's ballot not having seal of circuit court on back not official ballot and should not be counted.*—

Under the provisions of §7502 Burns 1926, §6927e Burns' Supp. 1921, an absent voter's ballot which does not have the seal of the clerk of the circuit court on the back thereof is not an official ballot and should not be voted, and, if voted, should not be counted.  p. 547.

4.   ELECTIONS.—*Provision of Absent Voters' Law requiring clerk to affix seal of court to ballot is mandatory.*—The provision of §5 of the Absent Voters' Law (§7502 Burns 1926, §6927e Burns' Supp. 1921, Acts 1919 p. 691) requiring the clerk to affix the seal of the circuit court on the back of each ballot before mailing or delivering it to voter is mandatory.  p. 548.

5.   ELECTIONS.—*Right to vote not an inherent or natural right, and may be limited or restricted.*—The right to vote is not an inherent or natural right, and is not of necessity connected with the right of citizenship; consequently, it may be limited or restricted.  p. 550.

6.   ELECTIONS.—*Presumptions are in favor of voter in casting his ballot where not shown that he attempted to circumvent election law.*—The right to vote having been granted by the constitution, all presumptions are in favor of the voter in casting his ballot where there is nothing to show that such voter in any way sought to circumvent the election law.  p. 550.

7.   ELECTIONS.—*When provisions of election law are mandatory, and when directory stated.*—Provisions of an election statute relating to the time and place of holding election and the legal qualifications of electors are generally mandatory, but provisions which affect the receiving and recording of the ballots and the canvass of the votes received and regulations concerning the mere details of elections are directory.  p. 553.

8.   ELECTIONS.—*Irregularities in election not affecting voter's choice of candidates and his indication thereof not vital and will not defeat his vote.*—Irregularities in an election which have nothing to do with the voter's choice of candidates and his indication to the election officials of such choice as required by law are not vital and will not defeat his vote.  p. 553.

9.   ELECTIONS.—*Voter's ballot which is official and regular not defeated by neglect, oversight, mistake or fraud of election officials.*—It is a well-established rule that a ballot that is official and regular when it reaches the inspector of an election to be voted shall not be refused by the election officers because of the neglect, oversight, mistake, or fraud of the election officers.  p. 554.

10.   ELECTIONS.—*Absent Voters' Law is directory only as to signatures of poll clerks on back of ballot.*—That part of the Absent Voters' Law (§7508 Burns 1926, §6927j Burns' Supp. 1921) which provides that the poll clerks shall put their ini-

tials in ink on the lower left hand corner of the back of each of such ballots is not mandatory, but directory only.    p. 554.

11.    ELECTIONS.—*Absence of poll clerks' initials from absent voter's ballot does not invalidate it.*—The fact that the initials of the poll clerks do not appear on the back of an absent voter's ballot, as prescribed by §7508 Burns 1926, §6927j Burns' Supp. 1921, does not invalidate such ballot, the statute being directory only and not mandatory.    p. 554.

From Blackford Circuit Court; *Frank W. Gordon,* Judge.

Election contest proceeding by Walter C. Hughes against Ruth Werber, commenced before the board of commissioners of Blackford county.    An appeal was taken to the Blackford Circuit Court, which decided for the contestor.    From this decision, the contestee appeals.    *Reversed.*

*Bonham & Bonham* and *Condo & Batton,* for appellant.

*Emshwiller & Emshwiller* and *Eichhorn & Edris,* for appellee.

TRAVIS, J.—Suit by appellee against appellant to contest the result of the general election held in Blackford county November 7, 1922, for the office of auditor of the county.    The board of canvassers declared appellant elected to the office of auditor and issued a certificate of election to her. . The contest was begun before the board of commissioners by contestant by a petition in one paragraph, to which was addressed an answer in general denial.    The trial before the board of commissioners resulted in a finding and order in favor of appellant, whereupon appellee appealed to the circuit court, where the cause was submitted and tried without a jury upon the same pleadings.    Upon request the circuit court made its special findings of facts and conclusions of law.    The conclusions of law were in favor of appellee, and were followed by a judgment for ap-

pellee, that he was duly elected to the office of auditor of Blackford county. Appellant filed exceptions separately and severally to each conclusion of law, and on appeal, assigned as erroneous the second, sixth, and seventh conclusions of law.

The second conclusion of law is that certain of contestee's exhibits, which exhibits are voted ballots, bear distinguishing marks and are illegal and void and should not be counted. Of the number of ballots mentioned in the second conclusion of law, appellant brings into question fourteen. A consideration of ballot marked exhibit 159 under his conclusion of law, may be used in deciding the legality of each one of the fourteen ballots. Ballot exhibit 159, bore the prescribed cross in the circle containing the Republican party emblem, and the prescribed cross in each and every square in front of the names of all candidates of the Republican ticket, and bore no other mark. Appellant contends that such a marking of the ballot only emphasizes the voter's intention to vote a straight ticket, and that such a marking casts no suspicion on the integrity of the ballot. The reason for the radical change in the manner of conducting elections from the simple form to that of the Australian system of balloting was to rid elections of the vices attending elections of public officials under the old system of balloting. One of the vices attending elections of public officials was that of the sale and purchase of votes. In order to prevent the carrying out of such traffic in the ballot, it was deemed necessary to obliterate as far as possible the identity of each particular ballot so that it would be impossible for anyone, even the person who voted it, to recognize it after it had been removed from the ballot box. To make a rule covering this situation, be it never so arbitrary, the general assembly provided that "If the

voter marks on the large circle enclosing the device *he shall not mark elsewhere on the ballot,* unless there be no candidate for some office in the list presented under such device, in which case he may indicate his choice for such office by marking the square to the left of the name of any candidate for such office on any other list. *A mark on the ballot in violation of this provision shall be treated as a distinguishing mark.*" (§7497 Burns 1926, §6927 Burns 1914.)    "Any ballot which shall bear any distinguishing mark   *   *   * shall be void, and shall not be counted."    (§7526 Burns 1926, §6934 Burns 1914.)    (Our italics.)

Within the wisdom and judgment of the general assembly, the law was so made that a mark such as made on exhibit number 159 is, by the statutory definition, a distinguishing mark, which is by the statute unequivocally pronounced void, with the mandate that such ballot shall not be counted.    The wording of these statutes is plain and is not subject to any ambiguity in the particulars mentioned.    Where the meaning of the statute is plain and free from ambiguity, it is not for the court to decide any matter relating to the necessity of the provisions set forth in the law.    The legislative authority is supreme when not in violation of a higher organic law.    The other thirteen ballots complained of under the trial court's second conclusion of law, while differing in some respects from exhibit 159, come within the violated parts of the statutes in the reasoning of this opinion in relation thereto.    The court therefore holds that each of the fourteen ballots had a distinguishing mark, and that each of said ballots was void on account thereof and should not be counted, and that the trial court's conclusion of law number 2 is not erroneous.    *Borders* v. *Williams* (1900), 155 Ind. 36, 57 N. E. 527.

The fourth assignment of error is, that the court

erred in its conclusion of law No. 7, in holding that five ballots were illegal and void and should not

3. be counted, for the reason that they were absent voters' ballots and did not have the impression of the official seal of the clerk of the Blackford Circuit Court. That provision of the absent voter's law which requires that each ballot, before being sent to the applicant, shall have upon the back of the ballot the signature of the clerk of the court and also the seal of the court, is for a double identification and is for the express purpose of the purity of the ballot. It is the duty of the voter on the receipt of the ballot from the proper authority to examine it to see if it is official. In the sense that it has everything done to it which is prescribed by law, when the ballot comes into the hands of the absent voter it is an official ballot. If it lacks any of the statutory requirements of identification when it comes into the absent voter's hands, it is then lacking in some one or more of those things which are required to make it an official ballot. Upon receipt of the ballot and finding that it was not official, the voter should have returned it and asked for a properly prepared official ballot. A voter voting in person is charged with the duty of examining his ballot when he receives it from the poll clerk, and, if it is not prepared according to law, he must return it to the poll clerk and then receive one which is properly prepared. The identification of the ballot when voted personally is required by the initials of each of the poll clerks on the ballot. One is a check upon the other, and it does not answer the law that the ballot has the initials of one poll clerk and not the other. *Blue* v. *Allee* (1916), 184 Ind. 302, 111 N. E. 185. It would be that much easier to violate the purity of the ballot if the initials of one poll clerk on the back of the ballot could be held to be sufficient, when the initials of both poll clerks are re-

quired, and the same reasoning applies in relation to the absent voters' ballots, in relation to the signature of the clerk of the court and the impression on the ballot of the seal of the court. Inasmuch as it has been held that a ballot is invalid and void and cannot be counted when voted personally within the election room if it lacks the initials of either one or both of the poll clerks on the back thereof, it follows that the identification of the absent voters' ballots in question was incomplete and such ballots ought not to have been voted by the persons who voted them, and, for want of proper identification, are illegal and void·and ought not to be counted. The seventh conclusion of law of the trial court is not erroneous.

Were the failure to affix the official seal to the ballot an irregularity of the absent voter, in that such irregularity did not tend to affect the result of the determination and selection by the voter of those for whom he voted, and thereby possibly have to do with the defeat of the majority, such failure to affix the official seal might then be. held to be directory. The act however was enjoined by the law to be performed by the clerk of the court, and because it was an act to identify the ballot, it is mandatory.

4.

To support the rule that the electors are not to suffer by casting their ballots, because of the default of their agents, the election officials, it has been held that an extension of the statute will not go so far as to hold the votes to be void merely because the law provides that the officers of election are liable to fine and imprisonment for a violation of a statute. The situation here is much more severe and bordering on violence, in that the neglect of the officer to perform his mandatory duty defeats the right of the elector when the irregularity is not discovered by the elector. To avert this condition as far as possible, the statute provides

that: "If any clerk of the circuit court of any county * * * or any election officer shall refuse or neglect to perform any of the duties prescribed in this act, or shall violate any of the provisions hereof, he shall be deemed guilty of a misdemeanor and shall upon conviction thereof be subject to a fine of not less than two hundred and fifty dollars ($250) nor more than five hundred dollars ($500), or be imprisoned in the county jail for a period of not to exceed six (6) months." §7512 Burns 1926, §6927n Burns' Supp. 1921. Because the provisions of this law are rigid, persons should not accept the duties of election officials unless they are willing to assume the chance of suffering a fine and imprisonment for neglect of their duty under this law. And inasmuch as the rigidity of the law may affect a vote otherwise pure so far as the elector is concerned, a prosecution for a violation by election officials would be salutary.

The assignment of error that the sixth conclusion of law is erroneous has to do with the contestee's exhibits numbered 134 to 147, both inclusive. The conclusion of the trial court was, that because the initials of the poll clerks of the precinct were not written on the back of each of these absent voters' ballots and did not appear thereon, that these ballots were illegal and should not be counted. It was admitted by the appellee and found by the court in its special findings of fact that the absent voters' ballots in question under this assignment of error were official ballots, which goes to the point that all acts necessary in the preparation and voting of these ballots were regular and according to law, except that the poll clerks in the precinct where they were voted did not subscribe their initials on these absent voters' ballots, before they were put in the ballot box, and marked "voted" opposite the name of the voters on the tally sheet.

Appellee contends that under the authority of *Blue* v. *Allee, supra,* these ballots were void and should not be counted, for the reason that the initials of the poll clerks of the precinct where such ballots were voted were not written and did not appear upon the lower left hand corner of the back of the ballots, as provided by law. §7508 Burns 1926, §6927j Burns' Supp. 1921.

The right to vote is not an inherent or a natural right, and is not of necessity connected with the right of citizenship. It is not a right analogous to personal liberty, and the right to acquire and enjoy property. It is a right only derivative from organized government. Being such, the source of the power to give has as great a power to limit and restrict the elective franchise. The restrictions placed about the matter of conducting elections arose by necessity because of the prevalence of the abuse of the use of the franchise. The system of the Australian ballot was for the accomplishment of the purity of elections and to prevent the perpetration of fraud wherever possible. In the growth of the law in the United States in relation to the restrictions upon the ballot, the courts have placed a line of demarkation on one side of which are the restrictions which are mandatory and on the other side those which are directory. *Gougar* v. *Timberlake* (1897), 148 Ind. 38, 39, 46 N. E. 339, 37 L. R. A. 644, 62 Am. St. 487. But the vote having been granted by organic law, all presumptions are in favor of the voter in casting his ballot, where there is nothing to show that such voter in any way has sought to circumvent the law, but that, instead thereof, he has complied strictly with all of its requirements incumbent on him. It has just been said of the absent voters' ballots that the requirement of the signature of the clerk of the court and the seal upon the ballot before he sends it out to the applicant is for security in the identifica-

tion of the ballot. Likewise, the initials of the poll clerks upon the ballots which are voted personally are for identification before the ballot is voted. The initials of the poll clerks upon the back of the absent voter's ballot lends nothing to the official character of the ballot. Its character is fixed when it has reached the hands of the absent voter, to be prepared to be voted. All other requirements being regular, the character of the official ballot was established when the clerk of the circuit court placed his signature and the seal of the court upon the ballot. These ballots in question came into the hands of the inspector of election regularly and lawfully, without taint of fraud or irregularity, and were voted by being placed in the ballot box without having the initials of the poll clerks thereon.

The question to be decided depends upon the construction of the statute, which says: "At any time between the opening and closing of the polls on such election day, the election inspector of such precinct, in the presence of the election board, shall open the outer or carrier envelope only, announce the absent voter's name and compare the signature upon the application with the signature upon the affidavit on the ballot envelope. In case the election inspector finds the affidavit properly executed and attested, that the signatures correspond, that the applicant is a duly qualified elector of the precinct, that he is duly registered, or that the applicant has not voted in person at such election, * * * the election inspector shall open the envelope containing the absent voter's ballot in such manner as not to deface or destroy the affidavit thereon and take out the ballot or ballots enclosed therein without unfolding or permitting the same to be unfolded or examined. The inspector shall then deliver such ballot or ballots to the poll clerks, who shall at once proceed to write their

initials in ink on the lower left hand corner of the back of each of such ballots in their ordinary handwriting and without any distinguishing mark of any kind and in the same manner as other ballots are required to be endorsed. The inspector shall thereupon deposit the same in the proper ballot box or ballot boxes and enter the absent voter's name in the poll book, the same as if he had been present and voted in person. *In the event that such affidavit is found to be insufficient, or that the signatures do not correspond, or that the applicant is not a duly qualified elector in such precinct or that he has voted in person at such election, or that he has not registered, if registration is necessary, or that the ballot is open, or has been opened and resealed, or that the ballot envelope contains more than one (1) ballot of any one (1) kind,* * * * such ballot or ballots shall not be accepted or counted." (Our italics) §7508 Burns 1926, §6927j Burns' Supp. 1921. It will be noted from the latter part of the quotation which is italicized, that such ballot shall not be accepted or counted in the event that certain things in relation to it do not comply with the law. In the earlier part of the quotation, it will be noted that the inspector, upon removing the ballot from the envelope, shall deliver it to the poll clerks, who shall at once proceed to write their initials in ink on the lower left hand corner of the back of the same. But in enumerating the infirmities, any one or all of which shall discredit the ballot so that it may not be accepted or counted, the failure of the poll clerks to have written their initials on the ballot is not mentioned and is not therefore a reason to discredit the ballot and thereby not accept and count it. Statutes which simply direct election officials to do something with the ballot after it has been tendered by the voter, when the law is silent as to the consequences that follow when such prescribed duties are not done,

may well be held to be directory only. To hold otherwise would prepare an easy path for fraud; for how easy it might be for election officials in a conspiracy in a certain election district to place absent voted ballots in the ballot box without the initials of the poll clerks, in a sufficient quantity to defeat an election by a majority of the electors. Such is not the purpose of the law and it has so been held in many jurisdictions. *People* v. *Bidelman* (1893), 69 Hun. (N. Y.) 596, 23 N. Y. Supp. 954; *State, ex rel.,* v. *Thayer* (1891), 31 Nebr. 82, 47 N. W. 704; *O'Hair* v. *Wilson* (1888), 124 Ill. 351, 16 N. E. 256.

Provisions of an election statute which have to do with the time and place of an election, and also the legal qualifications of electors, are considered generally to be the substantive law in relation to the election and generally mandatory. But those provisions which affect the receiving and recording of the ballot from the elector, the regulations concerning its being voted, which include all actions of all election officials in relation to the ballot after it passes from the hands of the voter to them, and the canvass of the votes received and the regulations concerning the mere details of the elections, are directory. The principle follows that irregularities in elections which have nothing to do with the selection among the candidates on the ticket, and the expression of the voter to the election officials of such election as required by law, shall not defeat the voter in such expression, and thereby the will of the majority of the electors. The merit of the case is what is to be most desired, and that is the will of the majority of those who have voted. *O'Hair* v. *Wilson, supra; Juker* v. *Commonwealth* (1853), 20 Pa. St. 485; *Morris* v. *Vanlaningham* (1873), 11 Kans. 269; *People* v. *Devermann* (1894), 83 Hun. (N. Y.) 181, 31 N. Y. Supp. 598.

The ballots in question came to the hand of the inspector of election without infirmity or fraud, but were regular in every respect, and the statute not declaring that the vote may not be counted because of any infirmity in relation to the ballot which arose from the neglect or fraud of the election officials of the precinct, in failing to have subscribed on the ballot the initials of the poll clerks, such voters ought not to be deprived of their rights as electors because of the oversight, negligence, mistake, or the fraud of the election officials. In this case, it is possible to prevent such electors from being deprived of their rights, because the statute itself fails to make mandatory the official act in question. *Moyer* v. *Van De Vanter* (1895), 12 Wash. 377, 41 Pac. 60, 29 L. R. A. 670, 50 Am. St. 900; *Gilleland* v. *Schuyler* (1872), 9 Kans. 569; McCrary, Elections (4th ed.) §227. It may be said to be the rule, well fortified by authorities, that the ballot, official and regular in all respects when it reaches the inspector of election to be voted shall not be refused by election officers to be voted or to be counted because of the neglect, oversight, mistake, or fraud of the election officers or any one of them. That part of the Absent Voters' Law (§7508 Burns 1926, §6927j Burns' Supp. 1921) which provides that the poll clerks shall put their initials in ink on the lower left hand corner of the back of each of such ballots is not mandatory, but directory merely. The fourteen absent voters' ballots in question contained a vote for the appellant. The sixth conclusion of law in relation to these ballots is erroneous and the ballots should be counted.

According to the trial court's conclusions of law there were 5,927 legal votes cast for auditor of Blackford county at the general election November 7, 1922, not including the fourteen absent voters' ballots in question under the sixth conclusion of law. Of the num-

ber of legal votes so found to have been voted, the contestor, appellee Walter C. Hughes, received 2,966 valid and legal votes, and the contestee appellant, Ruth Werber, received 2,961 valid and legal votes for the office of auditor of Blackford county at said election. The contestee, appellant herein, is entitled to have the fourteen absent voters' ballots added to those found to have been legally cast for her by the trial court, which will give the appellant 2,975 votes, which is a majority of nine over the number of votes cast for appellee as concluded by the trial court.

The judgment is reversed, and the Blackford Circuit Court is directed to change its conclusion of law in relation to contestee's exhibits numbered 134 to 147, both inclusive, so that the absent voters' ballots as represented by such exhibits are legal ballots and should be counted; and to change and modify its conclusion of law concerning the number of valid and legal votes received by each candidate for the office of auditor of Blackford county, to be that the number of legal votes cast at such general election was 5,941, of which appellant Ruth Werber received 2,975 valid and legal votes for such office, and appellee Walter C. Hughes received 2,966 valid and legal votes for such office, and that the appellant received a majority of nine of all the legal votes cast for the office of auditor of Blackford county at the general election held November 7, 1922; and that Ruth Werber is duly elected to the office of auditor of Blackford county at said general election and is entitled to the possession and to hold said office of auditor; and to enter judgment for the contestee, appellant Ruth Werber, that she is the duly elected candidate for the office of auditor of Blackford county and entitled to the possession of said office for a period of four years commencing on January 1, 1923, and for costs.

Gemmill, J., not participating.