McArtor v. State of Indiana, ex rel. Lewis.

[No. 24,741. Filed July 1, 1925. Rehearing withdrawn October 1, 1925.]

1. ELECTIONS.—*Ballot with straight line through middle of cross before candidate's name held illegal.*—A ballot with a straight mark or line through the middle of the cross from left to right before the name of a candidate for office is a distinguishing mark and renders the ballot illegal. p. 466.

2. ELECTIONS.—*Erasure of party designation from square in front of candidate's name distinguishing mark and mutilation of ballot.*—An erasure of the party designation within the square preceding the name of a candidate for office is not only a distinguishing mark but constitutes a mutilation of the ballot, rendering it illegal. p. 466.

3. ELECTIONS.—*Voter who gets his vote in election room in manner and time prescribed by law entitled to have ballot counted even though after polls closed.*—A voter who gets his vote inside the election room in the manner and in the time prescribed by law is entitled to have his vote deposited in the ballot box and counted even though it be after six o'clock, the time for closing the polls. p. 468.

4. ELECTIONS.—*Right of voter is paramount and neglect or fraud of election officers should not be allowed to deprive voter of right to vote and have vote counted.*—The right of the voter is paramount and the neglect of the election officers, or even their fraud, should not be allowed to deprive the voter of his right as a citizen to cast his vote and have it counted. p. 468.

5. ELECTIONS.—*Absent voter's ballot properly and timely placed in hands of clerk of court not invalidated by failure of election officials to perform their duty.*—When an absent voter's ballot which is marked as required by law and is placed in the hands of the clerk of the circuit court within the time pre-

scribed by statute, it becomes the duty of the election officers to perform their duties under the statute, and their failure to do so will not invalidate the ballot or affect the right of the voter to have it cast and counted. p. 469.

6. ELECTIONS.—*Absent voter's ballot must be received by clerk in time to deposit it with election board before the polls closed.*—An absent voter's ballot must be received by the clerk of the circuit court in time for him to deposit it with the election board of such voter's precinct before the closing of the polls on election day. p. 469.

7. ELECTIONS.—*Absent voters should not be required to state how they voted unless evidence has been adduced showing that their votes were illegal.*—In an action of *quo warranto* for possession of an office, it was not proper to ask persons who voted as absent voters for whom they cast their votes, as such absent voters were entitled to the secrecy granted to all voters and, unless evidence was adduced showing their votes were illegal, they should not be required to state how they voted. p. 470.

8. ELECTIONS.—*Application to clerk of court for absent voter's ballot when clerk was away from his office and return of same to him under same circumstances held not to invalidate ballot.*—That a person otherwise qualified to vote made application for an absent voter's ballot to the clerk of the circuit court when he was away from his office and received such ballot from such clerk, and, in all things complied with the law in respect to voting such ballot, and thereafter delivered the same to such clerk when he was away from his office, does not make such ballot invalid. p. 470.

9. ELECTIONS.—*Legal voting place of husband and wife when husband has temporarily changed his abode without intention of changing residence.*—Where a husband had temporarily changed his abode from his home to another precinct, without any intention of making it his permanent residence, his vote in the precinct to which he had moved would be invalid and his wife's vote in the precinct of their home would be valid. p. 470.

10. APPEAL.—*In determining whether verdict sustained by sufficient evidence, only evidence favorable to verdict considered.*—In determining whether a verdict was sustained by sufficient evidence, only evidence supporting the verdict will be consideral and evidence contradicting it will be disregarded. p. 472.

From Martin Circuit Court; *Milton S. Hastings,* Judge.

Action by the State of Indiana on the relation of Elza

Lewis against Edgar McArtor. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Fabius Gwin* and *Padgett & Clark*, for appellant.
*Carlos T. McCarty, Hiram McCormick, Allen, Hastings & Allen* and *Frank E. Gilkison*, for appellee.

PER CURIAM.—This was an action brought by appellee against the appellant in *quo warranto* to recover the office of township trustee of McCameron township, Martin county, Indiana.

The issues consisted of a complaint in three paragraphs. They were numbered 1, 3 and 4. Originally there were four paragraphs, but the plaintiff dismissed the second. There was an answer in nine paragraphs; the first paragraph of answer was a general denial and the other eight paragraphs were affirmative. A reply in general denial was filed to each affirmative paragraph of answer. The defendant afterward dismissed his sixth paragraph of answer. Demurrers filed to the third and fourth paragraphs of complaint and to each of the affirmative paragraphs of answer were overruled. There was a trial by jury and a verdict returned for the plaintiff, appellee. Upon this verdict, a judgment was rendered by the court as follows:

"It is therefore ordered, considered and adjudged by the court that the defendant, Edgar McArtor, be ousted from office of township trustee, McCameron township, Martin county, Indiana, and that he deliver the same and turn over all books and papers and appurtenances thereof belonging to said office to Elza Lewis, the relator herein forthwith. It is further considered and adjudged that the said Elza Lewis, relator herein, recover of the defendant, Edgar McArtor, no damages in this cause and that he recover of the said Edgar McArtor costs and charges in this cause laid out and expended."

From this judgment appellant appeals and assigns as error: (1) The court erred in overruling appellant's demurrer to each the second, third and fourth paragraphs of plaintiff's complaint; (2) the court erred in overruling appellant's motion for a new trial.

The issues consisted of a complaint, in three paragraphs, and an answer in eight paragraphs, and a reply in general denial to the affirmative paragraphs of answer.

The first paragraph of the complaint, omitting the caption and signatures, is in words and figures following, to wit: "The plaintiff respectfully gives the court to understand and be informed that the relator was, on the 7th day of November, 1922, and has ever since been, a bona fide resident and elector of McCameron township, Martin county, Indiana, and eligible to be elected to and hold the office of trustee of said township. That on the 7th day of November, 1922, at a general election held in said township, for the election, among other officers, of trustee of said township, the relator and defendant were the only candidates for said office. That the relator was a candidate on the Republican ticket and the defendant was a candidate on the Democratic ticket. That in the canvass of the vote of the electors of township, at said election, the election boards in the two election precincts of said township, by error and mistake awarded and counted to the defendant two hundred twenty-two votes and to the relator two hundred twenty-one votes, and thereupon said defendant was duly declared elected, by said election board and the inspectors of said precincts. That in truth and in fact there was cast for the defendant at said election by the qualified voters of said township two hundred twenty-two votes and there was likewise cast for the relator two hundred twenty-four votes and therefore the relator was elected to said office by a majority of

two votes. That the relator has filed his bond as such official to the approval of the proper officers, and has taken the oath of office as such trustee. That notwithstanding the fact that the relator was elected to said office and is entitled to perform the duties and receive the emoluments thereof, the defendant has unlawfully and wrongfully intruded in the said office and usurped the duties and emoluments thereof, to plaintiff's damage in the sum of one thousand dollars. That said defendant still wrongfully and unlawfully keeps the relator out of possession of said office and deprives him of the duties and emoluments thereof. That on the first day of January, 1923, the relator demanded of the defendant possession of said office and the books and papers belonging thereto, which was refused. WHEREFORE, Plaintiff demands judgment for one thousand dollars damage, that the defendant be ousted from said office and that the relator have possession thereof and he asks for all proper relief in the premises." The third paragraph alleges certain violations of the election laws and the fourth alleges that defendant was guilty of certain violations of the Corrupt Practice Act, which rendered him ineligible to hold any public office.

An agreed statement of facts as follows is made part of the evidence: "The following facts are agreed to by the parties and are to be taken and considered by the jury as evidence without further proof. That at the November, 1922, election in McCameron township, Martin county, Indiana, the relator, Elza Lewis, and the defendant, Edgar McArtor, were the only candidates for the office of township trustee of said township and their names as such candidates for said office appeared on the official ballot in said township; that each of said candidates were bona fide residents of said township and qualified voters therein at that time and each was over the age of twenty-one years. That at said elec-

tion the names of 453 persons were recorded on the poll books as having voted at said election, and 453 ballots were placed in the township ballot box. That the election officers of said election in said township canvassed the votes cast at said election for said candidates for trustee and counted 221 votes for relator and 222 votes for defendant and declared the defendant elected to the office of trustee of said township and issued to defendant a certificate of election as provided by law and thereafter defendant duly qualified as trustee of said township and on January 1, 1923, the defendant took possession of said office and has been in possession thereof ever since, discharging the duties and receiving the salary thereof, which salary is six hundred dollars per year. That on the 21st day of December, 1922, the relator, Elza Lewis, filed his bond as trustee of said township and took the oath of office as required by law and before the commencement of this action demanded possession of said office from the defendant.

"It is further agreed that 224 of the ballots cast at said election were marked for Elza Lewis, as such candidate, and are regular and without distinguishing marks and if nothing further appears to disqualify said votes for anyone of them, should be counted for the relator. That 220 of the ballots cast at said election were marked for Edgar McArtor, and are regular and without distinguishing marks, and if nothing further appears to disqualify said votes or any of them, should be counted for the defendant. That nine other ballots were cast at said election and are not included in the foregoing count."

The first assignment of error is expressly waived by the appellant in his brief in which he says, "the only question appellant desires to present by this appeal is this: That the court erred in overruling appellant's

motion for a new trial. The motion for a new trial presents certain alleged errors of the trial court in the admission and rejection of evidence and also that the verdict of the jury is not sustained by the evidence and is contrary to law."

Appellant claims that the court erred in sustaining appellee's objection to the admission in evidence of appellant's exhibits Nos. 1 and 4, being two of the official ballots cast for appellant, and being two of the ballots included in the nine referred to in the agreed statement of facts. The objection to the exhibit No. 1 is that the cross opposite the name Christopher C. Williams, for township advisory board, has a straight line drawn from left to right horizontally through the middle of the cross and that this constitutes a distinguishing mark and for that reason the ballot is illegal and not proper evidence to give to the jury. An examination of this ballot shows that it contains a cross in the square under the letters *"Dem"* before the name of Christopher C. Williams, democratic candidate for township advisory board and that there is a mark, a straight mark or line, through the middle of the cross from left to right. The court held that this was a distinguishing mark and rejected the ballot.

Appellant's exhibit No. 4 was objected to for the reason that an erasure appears in the square opposite the name of Christopher C. Williams, for township advisory board, to the extent that it rubbed out the party designation within the square and made not only a distinguishing mark but also a mutilated ballot. This objection was sustained. There was no error in sustaining these objections to defendant's exhibits Nos. 1 and 4. *Sego* v. *Stoddard* (1894), 136 Ind. 297, 36 N. E. 204, 22 L. R. A. 468; *Zeis* v. *Passwater* (1895), 142 Ind. 375, 41 N. E. 796; *State,*

*ex rel.,* v. *Thornburg* (1912), 177 Ind. 178, 97 N. E. 534; *Lewis* v. *State, ex rel.* (1915), 184 Ind. 99, 109 N. E. 777.

It is claimed by the appellant that twenty-three absent voters' ballots were illegally cast for appellee. The appellant claims that these were illegal votes and should not have been counted because of certain irregularities and alleged misconduct of the clerk of the circuit court in receiving the ballots and misconduct or neglect on the part of the inspectors in placing these ballots in the ballot box, it being claimed by the appellant that they, or at least some of them, were placed in the ballot box after the polls had been closed and that they were delivered by the clerk of the circuit court to the inspector without being enclosed in a carrier envelope. Another objection made by appellant to the absent voters' ballots was that the clerk of the circuit court, when he was away from his office but in the county, permitted voters who had availed themselves of the privilege of voting an absent voter's ballot to mark the same in his presence or by his direction in the home of the voter but it is not claimed that such clerk could see how such ballot was voted.

Section 7504 Burns 1926, §6927g Burns' Supp. 1921, provides that any absent voter's ballot shall be received by the clerk of the circuit court of the county in time for him to deposit it with the election board before the closing of the polls on election day. Section 7506 Burns 1926, §6927h Burns' Supp. 1921, provides that the clerk of the circuit court shall inclose the same unopened in a large carrier envelope and the next section (§7507 Burns 1926, §6927i Burns' Supp. 1921) provides that he shall deliver it to the election inspector and §7508 Burns 1926, §6927j Burns' Supp. 1921 proceeds to say what shall be done with such ballot after it is in the hands of the inspector.

In the instant case, it does not appear that any of the absent voters' ballots complained of were voted by persons who were not legal voters of the precinct in which they were cast and it appears that the voters in each instance had placed them in the hands of the clerk of the circuit court in the manner provided by law.

The ballots having been delivered to and received by the election officers and the counting of the ballots completed, the acts of the board and of all officers are taken as directory and the voter who gets his vote inside the election room in the manner and within the time prescribed by law, then, so far as he is concerned, he has voted, and if the officers, inspectors and judges and clerks fail to do their duty in any way, then that is deemed by the law as directory, and the one who is voting has a right to have his vote deposited in the ballot box and counted even though it be after six o'clock. It is the voter himself who has the right. These officers might be punished for what they did, but the voter has a right to have his vote counted. The right of the voter is paramount and the neglect of the election officers or even their fraud should not be allowed to deprive the voter of his important right and duty as a citizen to cast his vote and have it counted as cast. Any other rule would, to a dangerous extent, leave the results of elections in the hands of the election officers, when the intention of the statute is to promote the exercise of free government by all of the lawful voters of the country, and not to leave it in the hands of the officers selected under the law to serve them. It may be said to be the rule that the ballot, official and regular in all respects when it reaches the inspector of election to be voted, shall not be refused by election officers to be voted or to be counted because of the neglect, oversight, mistake or fraud of the election officers or any of them.

When an absent voter gets an official ballot and marks it as required by law and sees that it gets into the possession of the circuit clerk in the manner and

5. within the time prescribed by the statute, it is then the duty of the circuit clerk and the election officers to do their duty under the statute and their failure to do so will not invalidate the ballot or affect the right of the voter to have it cast and counted.

In this instance, it is not claimed that the absent voters were not legal voters in the precincts in which their votes were cast and counted, but it is claimed that the clerk of the circuit court and the election officers were remiss in their duty. It is not claimed that these absent voters' ballots were received by the inspector after six o'clock p. m. of election day.

An absent voter's ballot must be received by the clerk of the circuit court of the county in time for him to deposit it with the election board of such elector's

6. voting precinct before the closing of the polls on election day. It then becomes such clerk's duty to put it in the hands of the inspector, and the statute prescribes how that shall be done. If the votes of the absent voters were placed in the hands of the clerk of the circuit court within the time and in the manner prescribed by statute and by such clerk delivered to the inspector at the voting place, and such absent voters are legal voters of the precinct, the voter shall not be deprived of his vote or the right to have it counted by any neglect or misconduct of the clerk of the circuit court or of the election board. See §7611 Burns 1926, §7009 Burns 1914; McCrary, Elections (4th ed.) §231; *Gilleland* v. *Schuyler* (1872), 9 Kans. 569; *Moyer* v. *Van de Vanter* (1895), 12 Wash. 377, 41 Pac. 60, 29 L. R. A. 670, 50 Am. St. 900.

The rule laid down by McCrary, Elections is: "That the voter shall not be deprived of his rights as an elector

either by the fraud or mistake of the election officer, if it is possible to prevent it."

Each of the absent voters was asked, by the defendant, for whom he cast his vote. The plaintiff objected to these questions and stated as a reason that an 7. absent voter is entitled to the secrecy granted to all voters casting a legal ballot, and that, unless evidence was adduced showing the absent voter's ballot to be an illegal ballot, he was not required to state for whom he voted. The trial court sustained this objection and we find no error in the ruling.

That a person otherwise qualified to vote at an election made application for an absent voter's ballot to the clerk of the circuit court when he was away 8. from his office, and received such ballot from such clerk and in all things complied with the law with respect to voting such ballot and in proper form delivered the same to such clerk when he was away from his office does not make such ballot invalid.

It appears from the record that one William Girdley, husband of Anna Girdley, voted in the north precinct of McCameron township and voted for appellant 9. McArtor; that Anna Girdley, his wife, voted in the south precinct of McCameron township and voted for Lewis. The appellant contends that the vote of Anna Girdley should have been taken from the 224 votes accredited to the appellee Lewis, for the reason that the said Anna Girdley was not entitled to vote in the south precinct of said township. The testimony of William Girdley regarding his residence refutes this claim of the appellant. The following questions and answers of Mr. Girdley appear in the record:

"Q. 102. Mr. Girdley, at the time you moved from the south precinct of McCameron township to the north precinct on the 14th day of September, 1922, state

whether or not you moved there with the intention of making it your residence? A. No, sir.

"Q. 103. Did you ever at any time determine to make that your residence? A. No, sir.

"Q. 106. Where did you intend your residence to be? A. Well, I never particularly intended it being anywhere, I was just moving here and there. If I had a permanent residence it was in the south precinct. When I went to the north precinct it was my intention to stay there just merely temporarily while I had that job digging coal."

This testimony refutes the claim of the appellant and shows that the legal residence of William Girdley and Anna Girdley was in the south precinct of McCameron township where she voted. This evidence also shows that the vote of William Girdley cast in the north precinct of said township was cast in a precinct in which he did not have a right to vote and his vote being for the appellant should have been taken from the number credited to the appellant in the agreed statement of facts. However, it does not appear that any question was raised by the pleadings on his vote.

Of the nine votes not included in the count, as stated in the agreed statement of facts, the trial court rejected defendant's exhibits Nos. 1 and 4 and admitted in evidence defendant's exhibit No. 2, which was a ballot marked for defendant McArtor, and it was counted for him, and this brought the ballots accredited to him up to 221 and, from what we have said, it follows that no ballots should be deducted from the 224 accredited to the relator, Lewis.

The record does not disclose what became of the other six ballots not included in the count as stated in the agreed statement of facts and it may be presumed that they were rejected for reasons satisfactory to the election board and not disputed by either party to this suit.

In determining whether the verdict is sustained by sufficient evidence, only the evidence supporting the verdict should be considered and evidence contradicting the evidence in support of the verdict cannot be considered. Applying this rule, it appears that every fact essential to sustain the verdict is supported by some evidence. The verdict is supported by sufficient evidence. We find no error in the record.

The judgment is affirmed.