BOONE *v.* SMITH.

[No. 28,318.   Filed February 11, 1948.]

*Hays & Hays* and *Joe W. Lowdermilk,* all of Sullivan, for appellant.

*Bedwell, Bedwell & Haines,* of Sullivan, for appellee.

EMMERT, C. J.—This is an appeal from a judgment of the Sullivan Circuit Court in an election contest brought by the appellant, Harold Boone, as contestor,

against the appellee, Jesse E. Smith, as contestee, wherein the contestor sought to establish that he was the duly elected township trustee of Hamilton Township, Sullivan County, at the general election held on November 5, 1946. There was no special finding of facts and conclusions of law requested or made in this case. The court found the contestee, Jesse E. Smith, had received 1704 votes, and the contestor had received 1702 votes. Upon this finding the court entered judgment that the appellee, Jesse E. Smith, was duly elected as said township trustee at said general election and that he hold said office for the term of four years from January 1, 1947. Previously the court had ordered a recount, and appointed three recount commissioners to recount all the votes from all the eight precincts of Hamilton Township, the majority of whom on December 12, 1946, filed with the court a verified report showing that the contestor, Harold Boone, had received 1660 votes, and the contestee, Jesse E. Smith, had received 1637 votes. Later, after the trial on the issues on the complaint for a recount, the court entered a finding and judgment as above stated. The only error assigned is the overruling of the contestor's motion for a new trial.

The parties at the trial on May 27th made a stipulation with reference to the votes received in the various precincts which may be summarized as follows:

| Precinct | Boone | Smith |
|----------|-------|-------|
| No. 1    | 306   | 227   |
| No. 5    | 92    | 85    |
| No. 6    | 84    | 82    |
| No. 7    | 105   | 106   |
| No. 8    | 122   | 110   |
|          | 709   | 610   |

| | | | |
|---|---:|---:|---:|
| *Uncontested votes, exclusive of absent voters ballots:* | | | |
| No. 2 | 396 | | 380 |
| No. 3 | 326 | | 381 |
| | | 722 | 761 |
| *Contested absent voters ballots:* | | | |
| No. 2 | 27 | | 42 |
| No. 3 | 16 | | 23 |
| | | 43 | 65 |
| | | 1474 | 1436 |
| *Votes as certified by election board in Precinct* | | | |
| No. 4 | | 217 | 266 |
| (Total) | | 1701 | 1702 |

It was further stipulated that none of the absent voters ballots in Precincts No. 2 and No. 3 were initialed by the clerks of said respective boards at any time, as provided for by § 29-4914, Burns' 1933 (Supp.), Acts 1945, ch. 208, § 207, that the same were counted for the respective candidates regardless of the absence of the poll clerks' initial thereon; but that should the court determine that any of the absent voters ballots received in Precincts No. 2 and No. 3 should be counted, that all be counted and added to the votes received by each candidate. It was also stipulated that the return of the Precinct No. 4 election board to the county board of canvassers showed 217 legal votes for Harold Boone and 266 legal votes for Jesse E. Smith.

Thus the issues in the trial court were (1) whether the absent votes in Precincts No. 2 and No. 3 were properly counted, and (2) what legal votes should be

counted for each candidate in Precinct No. 4. No absent votes were cast for either candidate in Precinct No. 4.

The appellant asserts that failure of the poll clerks to initial an absent voters ballot before it is deposited in the ballot box invalidates the ballot for all purposes. Determination of this question depends upon the proper construction to be given § 29-4914, Burns' 1933 (Supp.), Acts 1945, ch. 208, § 207, p. 680.

When a statute or a section thereof has been judicially construed by a court of last resort, and subsequently the legislature reenacts the same statute or section, or a statute or section thereof containing provisions substantially the same, the legislature will be deemed to have used the language as intending to mean the construction placed upon it by such court, unless the provisions of the subsequent statute clearly indicate that the legislature intended a different construction. *Brown* v. *Doak Co.* (1922), 192 Ind. 113, 120, 135 N. E. 343; *State ex rel.* v. *Miller, Trustee* (1923), 193 Ind. 492, 497, 141 N. E. 60; *Thompson* v. *Mossburg* (1923), 193 Ind. 566, 575, 139 N. E. 307, 141 N. E. 241; *Citizens T. & S. Bank* v. *Fletcher American Co.* (1934), 207 Ind. 328, 335, 190 N. E. 868, 192 N. E. 451, 99 A.L.R. 1474; *Calkins* v. *Service Spring Co.* (1937), 103 Ind. App. 257, 264, 7 N. E. (2d) 54; 3 Sutherland, Statutory Construction (3rd Ed.), § 3709; 59 C. J. 1061, § 625; 50 Am. Jur. 312, § 321.

Chapter 5 of the 1943 Acts established the Election Codification Commission which was authorized and empowered to "1. Study the operation, expense, construction, and enforcement thereof with a view of reducing election costs, *codifying,* correlating and unifying all existing legislation pertaining to elections, repeal of all unnecessary laws and enactment of all such new laws

as may be necessary, effectively to meet the requirements of present day conditions. 2. Prepare for submission to the next regular session of the General Assembly, a statement showing the results of such study, investigation and survey, together with bills for acts to accomplish the purposes herein stated."[1] (Italics added.)

The Indiana Election Code, which is ch. 208 of the 1945 Acts, § 29-2801, Burns' 1933 (Supp.), *et seq.*, was enacted to give a complete election law in one statute. Section 207 of the Election Code, § 29-4914, Burns' 1933 (Supp.), provides for the manner in which absent voters ballots should be voted by the precinct election boards, and after the envelopes containing the ballots had been opened, required, "The inspector shall then deliver such ballot or ballots to the clerks, who shall at once proceed to write their initials, above the signature of the clerk of the circuit court or the secretary of state as the case may be, in ink on the lower left-hand corner of the back of each of such ballots in their ordinary handwriting and without any distinguishing mark of any kind and in the same manner as other ballots are required to be indorsed. The inspector shall there-upon deposit the same in the proper ballot-box or ballot-boxes

---

[1] The title and preamble to ch. 5 of the 1943 Acts indicates an intention to recodify the election law: "AN ACT providing for the codification of the election laws of the state, providing for the appointment of a commission therefor and making an appropriation therefor.

"Whereas, State laws pertaining to primary, general and city elections, were in part, adopted by the special session of the General Assembly in the years 1852 and 1881, and such original acts have been amended and supplemented by many later sessions of the general assembly, resulting in numerous obsolete provisions, ambiguities, conflicts, deficiencies and a multiplicity of statutes relating to and governing the conduct of elections; and

"Whereas, It is desirable to unify, modernize, recast and recodify all such legislation; Therefore . . ."

and enter the absent voter's name in the poll-list, the same as if he had been present and voted in person. . . ." This is a substantial reenactment of § 12, ch. 316 of the 1935 Acts, which provided: "The inspector shall then deliver such ballot or ballots to the poll clerks, who shall at once proceed to write their initials, above the signature of the clerk, in ink on the lower left hand corner of the back of each of such ballots in their ordinary handwriting and without any distinguishing mark of any kind and in the same manner as other ballots are required to be endorsed. The inspector shall thereupon deposit the same in the proper ballot box or ballot boxes and enter the absent voter's name in the poll list, the same as if he had been present and voted in person. . . ."

Section 12 of ch. 316 of the 1935 Acts was a substantial reenactment of the absent voters law of 1917, § 10 of ch. 100 of the 1917 Acts, § 7508, Burns' 1926, which stated: "The inspector shall then deliver such ballot or ballots to the poll clerks, who shall at once proceed to write their initials in ink on the lower left-hand corner of the back of each of such ballots, in their ordinary handwriting, and without any distinguishing mark of any kind, and in the same manner as other ballots are required to be endorsed. The inspector shall thereupon deposit the same in the proper ballot box or ballot boxes and enter the absent voter's name in the poll book, the same as if he had been present and voted in person. . . ."

The legality of an absent voters ballot, where the only infirmity was the failure of the poll clerks to endorse their initials on the back thereof, was determined by this court in *Werber* v. *Hughes* (1925), 196 Ind. 542, 148 N. E. 149. In construing § 10 of ch. 100 of the 1917 Acts, § 7508, Burns' 1926, Judge Travis, (pages 552, 553) said:

". . . But in enumerating the infirmities, any one or all of which shall discredit the ballot so that it may not be accepted or counted, the failure of the poll clerks to have written their initials on the ballot is not mentioned and is not therefore a reason to discredit the ballot and thereby not accept and count it. Statutes which simply direct election officials to do something with the ballot after it has been tendered by the voter, when the law is silent as to the consequences that follow when such prescribed duties are not done, may well be held to be directory only. To hold otherwise would prepare an easy path for fraud, for how easy it might be for election officials in a conspiracy in a certain election district to place absent voted ballots in the ballot box without the initials of the poll clerks, in a sufficient quantity to defeat an election by a majority of the electors. Such is not the purpose of the law and it has so been held in many jurisdictions. *People* v. *Bidelman* (1893), 69 Hun. (N. Y.) 596, 23 N. Y. Supp. 954; *State ex rel.* v. *Thayer* (1891), 31 Nebr. 82, 47 N. W. 704; *O'Hair* v. *Wilson* (1888), 124 Ill. 351, 16 N. E. 256."

The holding in this case was later followed in *Wright* v. *Walker* (1926), 197 Ind. 561, 151 N. E. 424, wherein the court, speaking by Chief Justice Ewbank, held (page 567) : "It was error to reject the ballots of absent voters where they were in all respects regular and correct except that the initials of the poll clerks had not been indorsed thereon before the ballots were put in the box. *Werber* v. *Hughes* (1925), 196 Ind. 542, 148 N. E. 149, 153; *McArtor* v. *State ex rel.* (1925), 196 Ind. 460, 148 N. E. 477, 479."

We hold that under the above well recognized rules of statutory construction, it was not the intention of the legislature to reject an absent voters ballot simply because the election board's poll clerks failed to initial the back thereof when the voter

had fully complied with all legal requirements, and placed the ballot beyond his control, and could not be in any position to protect his vote by calling for a new ballot properly initialed or see that the poll clerks complied with the statute. The action of the trial court in counting the absent voters ballots in this case was correct under the stipulation as made in this contest proceedings. *Dobbyn* v. *Rogers* (1948), *ante,* p. 525, 76 N. E. (2d) 570.

During the progress of the trial there was a second stipulation made by the parties with reference to the ballots in Precinct No. 4, in which it was agreed there were 505 strung ballots which were counted by the board, of which Harold Boone received 228 legal ballots and one (1) which was objected to for the reason it had only the initials of one poll clerk placed on the back thereof, and of which Jesse E. Smith received 265 legal ballots and one (1) objected to for the reason it was illegally and improperly marked; and that there were ten (10) strung township ballots which had not been marked for either candidate for township trustee. The stipulation further covered ballots that had been placed by the board in the envelopes containing all disputed, protested, mutilated or uncontested ballots, but in the stipulation none of said ballots is identified by an exhibit number, nor is this court able to definitely determine from said stipulation what votes were legal votes and what votes were illegal. Although the motion for a new trial assigned as reasons therefor, (1) the decision of the court is not sustained by sufficient evidence, and (2) the decision of the court is contrary to law, the appellant in his propositions, points and authorities fails to direct our attention to any identified illegal ballot which may have been counted for the contestee, or any legal ballot which was not counted for

the contestor, and fails to state any reason why this court should examine and recount all the ballots in Precinct No. 4 to determine whether the trial court erred in its finding which included a recount of the votes in this precinct. See *Nicely* v. *Wildey* (1936), 210 Ind. 640, 647, 5 N. E. (2d) 111.

Since under the first stipulation, the trial court properly counted the absent voters ballots in Precincts No. 2 and No. 3, and since we are not able to ascertain that the trial court made any error in its recount of the votes in Precinct No. 4, its judgment is affirmed.

NOTE.—Reported in 77 N. E. (2d) 357.