THE STATE OF DELAWARE, *ex rel.* John H. Annett, Relator, v. ALBERT J. STIFTEL and JAMES B. CAREY, Associate Judges of the Superior Court of the State of Delaware, at Large and for Sussex County, respectively, constituting the Board of Canvass in and for Sussex County, Delaware, Respondents, and EDGAR T. ENGLISH, Intervenor.

(*January* 30, 1959.)

Southerland, C. J., and Wolcott and Bramhall, J. J., sitting.

*Frederick P. Whitney* for the Relator.

*H. Edward Maull* for Respondents and the Intervenor.

Supreme Court of the State of Delaware, No. 55, 1958.

Southerland, C. J.:

This is a petition praying that a writ of mandamus issue to the two judges of the Superior Court who constituted the Board of Canvass of Sussex County following the general election held November 4, 1958.

The facts are not in dispute. They are these:

At the general election referred to John H. Annett, the relator, was the Republican candidate for the office of Representative in the General Assembly from the Second Representative District of Sussex County, and Edgar T. English, the intervening respondent, was the Democratic candidate for the same office.

The Second Representative District contains three election districts. The unofficial returns indicated the election of Annett by a majority of three votes.

Upon the convening of the Board of Canvass on November 6 English filed petitions with the Board alleging error or mistake in the tabulation of the vote in the three election districts, particularly in respect of the count of absentee ballots. Upon examining the ballot box containing the absentee ballots the Board found that the official envelopes containing 16 of such ballots had not been signed by the clerks of election, as required by law. The Board rejected these ballots for that reason, determined that English had received a majority of thirteen votes, and certified his election.

Annett, alleging that the absentee ballots were valid and should have been counted, filed this petition to compel the Board to count them and to certify his election.

Because of the imminent convening of the General Assembly, we decided the case, and entered an order dismissing the petition, advising counsel that an opinion would be later filed. This is our opinion upon the matter.

The question before us concerns the construction of our election laws governing absentee voting.

Our first absentee voting law was adopted in 1943 (44 *Del. L.* c. 118), and was thereafter from time to time amended. In 1954 this law was assailed as unconstitutional in *State ex rel. Smith v. Carey*, 10 *Terry* (49 *Del.*) 143, 112 *A.* 2d 26, but we were not required to decide that question.

In 1955 the law was further amended to meet the objections advanced in the *Smith* case. 50 *Del. L.* c. 173. The absentee voting law is now Chapter 55 of the *Code of* 1953, 15 *Del. C.* § 5501 *et seq.*

The law sets forth with great particularity the steps required for absentee voting. A voter eligible to vote by absentee ballot must file with the Department of Elections an affidavit setting forth the facts entitling him to vote in that manner, sworn to by himself, his employer, or by a physician, as the case may be. Upon the filing of the affidavit with the voter's request to be furnished an official ballot, the Department is required to mail him a ballot in an official envelope, together with a "Voucher Envelope" and a "Carrier Envelope". On the voucher envelope is printed a form of affidavit. The voter must subscribe the affidavit before an officer authorized to administer oaths, must mark the ballot secretly in the presence of the officer, and place the ballot in the official envelope. The official envelope containing the ballot is then placed in the voucher envelope, and the voucher envelope must then be sealed. The voucher envelope is then placed in the carrier envelope and the

carrier envelope is mailed to the Department of Elections. At the Department the carrier envelope is opened, and the voucher envelope (unopened) is then placed in a special carrier envelope, which is then sealed and endorsed with the signatures of the President and Secretary of the Department.

On election day the special carrier envelopes containing absentee ballots are delivered to the Inspectors of Election in the appropriate election districts.

The procedure at the polling place for voting the absentee ballots is as follows:

"At any time between the opening and the closing of the polls on election day the Inspector or a Judge of Election of the election district shall open the outer or carrier envelope only and ascertain the name of the absentee voter as appears by the executed affidavit of the absentee voter on the voucher envelope enclosing the marked ballot; whereupon he shall announce the absentee voter's name for the purpose of challenges and upon the determination that such person is a duly registered voter of said election district by comparing the voter's signature upon the voucher envelope with the signature of the voter appearing in the Election District Record, and that such elector has not voted in person at the election he shall open the voucher envelope containing such absentee voter's ballot in such a manner as not to deface or destroy the number thereof, or the affidavit thereon, and take therefrom the official envelope containing the marked ballot, and without opening or permitting the official envelope to be opened or the contents examined, *shall cause the two clerks to write their names on the official envelope,* and the clerks shall enter the name and address of the absentee voter on the poll lists. The ballot shall then be voted in the same manner, with the proper entries thereof in the election records, as if the ballot had been tendered in person by the elector.

"All voucher envelopes from which ballots have been taken and voted, and all voucher envelopes containing ballots which

have been rejected and endorsed, as provided in section 5518 of this title, shall be preserved by the Inspector, and at the close of the count shall be placed in the ballot box as provided by the general election laws." 15 *Del. C.* § 5516. [Emphasis supplied.]

In the case before us the official envelopes in which the absentee ballots were contained were not signed by the two clerks as required by law.

The absentee ballot law (Chapter 55) does not itself prescribe the method of counting the ballots. Chapter 50, 15 *Del. C.* § 5001 *et seq.*, providing for the use of voting machines, supplies this lack. Section 5023 provides for the reading and tabulation of the vote recorded by the machine, and further provides:

"Absentee ballots, if any shall be counted as provided in section 4972 of this title."

Section 4972 prescribes the method of counting the vote when paper ballots are used. It provides in part:

"The ballots shall be read and counted in the manner prescribed by this section and in accordance with sections 4973, 4974 and 4975 of this title."

Section 4973 is not here important. Section 4974 prescribes certain rules for determining the intention of the voter and also declares that—

"If any name be written on the ballot, the ballot shall be void and not counted."

Section 4975 provides:

"In the counting of the votes any ballot contained in an envelope which is not endorsed with the names of the Clerks, as required by sections 4914 and 4938 of this title, or any ballot which bears such a mark, impression or device that it is apparent that such was placed thereon with the intent of distinguishing such ballot, or any ballot which is contained in any envelope which bears any such distinguishing mark, impression or

device, shall be void and shall not be counted. If any envelope contains more than one official ballot, none of the ballots contained therein shall be counted."

Plainly, the intent and effect of § 5023 of the voting machine law, quoted above, is to incorporate into the provisions regulating absentee voting the provisions of § 4974 and § 4975 regulating the counting and rejection of paper ballots.

Some, at least, of these provisions are of great importance in safeguarding against fraud in elections, particularly the provisions of § 4975 relating to the effect of distinguishing marks on the ballots. Another important provision is the prohibition in § 4974 against "write-in" votes. The legislature obviously intended that *all* the safeguards applicable to paper ballots when such ballots are the sole means of voting should be applicable to paper ballots used for absentee voting. No other construction of the applicable statutes is reasonably possible. Thus, unless § 4975 applies to absentee ballots no effective safeguard would exist against identification of the voter by the use of a distinguishing mark.

The provisions of § 4975 are mandatory. The language of the section is explicit. Ballots that violate or fail to comply with its provisions "shall be void and shall not be counted". The provision relating to ballots contained in envelopes not endorsed with the names of the clerks was construed by the Supreme Court in *State ex rel. Wahl v. Richards*, 5 *Terry* (44 *Del.*) 566, 64 *A.* 2d 400, 405, involving a number of ballots taken from unsigned envelopes and counted. The Court said:

"The 101 ballots in envelopes not signed by both clerks, when voted, were illegal and should have been rejected by the election officers in making the count."

The decision is directly in point here.

It is quite true, as relator points out, that Chapter 49, of which § 4975 is a part, deals primarily with elections conducted with paper ballots only, and much of it is either expressly or

impliedly inapplicable to elections conducted with voting machines. But this fact is of no consequence here. The important section, § 4975, is expressly made applicable to absentee voting.

Relator advances several arguments opposed to this conclusion.

1. It is said that the purpose of the provisions of § 4975 is to prevent fraud; that admittedly there was no fraud or intentional wrong-doing here, but a mere oversight; and that the statute (§ 5516) should be construed as directory only. Particularly is such a construction justified because, relator argues, the absentee voter has no opportunity to see for himself that the envelope is properly endorsed, and it is unjust to disfranchise him for no fault of his own. Numerous cases are cited from other jurisdictions, including *Werber v. Hughes,* 196 *Ind.* 542, 148 *N. E.* 149, which holds that a provision for poll clerks to initial absentee ballots is directory only.

This argument has appeal, but it runs afoul immediately of the express provisions of § 4975, which expressly declare that a ballot in an unendorsed envelope is void and shall not be counted. This is the plain legislative command, and the Court cannot ignore it. The *Werber* case is distinguishable, because there was no such express provision in the Indiana statute.

2. Next, is is said that the absentee ballot statute is complete on its face and its provisions provide the exclusive source of authority to invalidate ballots. Relator points to the provisions of § 5518 which provide for the rejection of an absentee ballot upon certain specific grounds such as an insufficient affidavit, evidence of opening or tampering with the voucher envelope, death of the voter prior to election day, and so forth. Section 5518 contains no provision requiring the rejection of the ballot because of failure of the clerks to endorse the official envelope. It is argued (in effect) that these grounds of rejection are exclusive, and may not be supplemented by reference to the provisions of the election law relating to elections in which only paper ballots are used.

The simple answer to this contention is that it completely ignores § 5023, which, as before explained, specifically directs that absentee ballots shall be counted as provided in § 4972, which in turn refers specifically to § 4975. It would be highly unreasonable to suppose that the General Assembly intended to dispense with all the prohibitions of § 4975 in the counting and rejection of absentee ballots; and it is impossible, because of the express language of § 5023, to disregard any of them.

This contention must be rejected.

3. Some point is made of a change in language in §5516 when is was re-enacted. The section was first adopted in substantially its present form in 1945 (45 *Del. L.* c. 155, sec. 12). It was repealed in 1953 (49 *Del. L.* c. 278, Sec. 11) and re-enacted in 1955 (50 *Del. L.* c. 173, sec. 7). As it existed between 1945 and 1953, the langauge relating to the endorsement of the official envelope by the clerks of election read:

"* * * shall cause the two poll clerks to write their names on the official envelope *as in the case of other official envelopes, * * *.*" [Emphasis supplied.]

When the section was re-enacted in 1955 the underlined language was omitted. The omitted language referred to the provisions of § 4914 and § 4938, requiring the clerks to sign official envelopes used in elections in which only paper ballots are used. Relator argues from this omission an intent to divorce entirely the absentee voting provisions from the provisions of Chapter 49, including § 4975. Again, this argument ignores the specific langauge of § 5023. The reason for the omission is obvious. It was intended to fit the provisions of § 5516 into the procedure for the use of voting machines, which dispenses with the need for paper ballots and envelopes except in respect of absentee voting. In elections conducted by voting machines there are no "other" official envelopes. Thus the former language became superfluous when voting machines were adopted.

This argument is without substance.

For the reasons stated above, we were of opinion that the Board of Canvass of Sussex County was right in refusing to count the sixteen absentee ballots, and we therefore dismissed the petition for mandamus.